Good afternoon, please proceed. We're here to hear the embankment argument in Abdisalan v. Holder. Judge Pice is joining us by video. Good afternoon, Judge Pice. Can you hear me? Yes, I can, Chief. Okay, you're coming through loud and clear. Okay. In living color. Yeah. Great. Council ready? You may proceed. May it please the Court. My name is Hillary Hahn, and I'm appearing with my co-counsel, Vicky Dobrin, on behalf of the petitioner, Sama Abdisalan, who is also here in the courtroom today. I'd like to reserve five minutes for rebuttal, if I may. In this case, the Board of Immigration Appeals issued a decision in which it remanded Ms. Abdisalan's asylum appeal in which it affirmed the denial of Ms. Abdisalan's asylum application, but remanded to the immigration judge for further proceedings with regard to the withholding of removal application, in particular to determine whether background checks had been completed before entering a new order. The primary issue before the Court today is whether a remand order like this for background checks constitutes a final order for purposes of judicial review. And we believe that it doesn't, and we believe that the starting point for this analysis is the statute itself, 8 U.S.C. Section 1101A47, which defines a final order of deportation or removal. And under 1101A47, agency action becomes a final order of removal once two things have happened. First, an immigration judge must find that the petitioner is removable or order removal. And second, the Board of Immigration Appeals must either affirm that order or the time, the 30 days to appeal that decision to the Board must lapse. And a remand order, in our view, clearly meets the first requirement in that, as a prerequisite to considering the applications for relief, the immigration judge must have either found the person removable or ordered removal. And that's the case here, because with Ms. Abdi-Solan and Ms. Abdi-Solan's case, the immigration judge granted withholding of removal, but as a prerequisite to doing so had to order her removed to Somalia. But that's not the part of the order that you are contesting. The part you're contesting was final as of the time that the asylum application was denied. There was nothing else that was going to happen pertaining to that. Why isn't it more efficient and more consistent with the idea of moving things along swiftly to have whatever happens with withholding, which is a different kind of relief altogether, which could take months or years, to have the determination as to asylum be reviewed right away? Because I think that the first question has to be whether there's been a final order of removal under the statute. And I don't think that a remand order can ever be a final order, because it requires that the board affirm the immigration judge's order. The Board of Immigration Appeals didn't do that. It affirmed the immigration judge's order in part, but it remanded back to the immigration judge for further proceedings. Why wouldn't a better practice be to simply have the board declare its decision on, in this case, asylum, and then hold the case, as we frequently do, and order a limited remand so that the background checks could be completed? And then once the immigration judge reported that those were final, the board could issue its final order, and everything would be wrapped up in one appealable ball. I agree that that probably would be a better practice, and actually the board is empowered to do that. But they didn't do it in this case. Are they doing it now as a regular matter, or is it still inconsistent? My understanding, and there was an amicus brief on this. Mr. Ross' amicus brief addressed this. And I think he said in his footnote that he's not aware of the board doing this. But how does that have anything to do with the finality question? I mean, in either event, I mean, it might be faster that way. But as to our problem, which is whether there's finality, in either event you'd be waiting for the background check to get finished, right? I think that's right. And I think that there can only be one final order of removal, and I think that's mandated by the statute. 1101A47A talks about the order of the special inquiry officer. And then 1101A47B says that that becomes final when the order is affirmed by the board of immigration appeals. But how come we have jurisdiction over denials of motions to reopen separately? Because there's a particular provision in Section 1252B6 which talks about consolidation of petitions for review from motions to reopen and motions to reconsider. And that's what the Supreme Court relied on in Stone. Consolidation here, but there's still two separate petitions. Right. And, you know, our view in this particular case, I mean, we filed two different I'm sorry, but I still don't understand the answer to the question. If there's only one final order for removal, suppose there's a pending motion to reopen at the time that you come here on the petition for review from the first order. My understanding is that we do have jurisdiction over the first one. Whereas in Lopez Ria, for example, if it's been granted, that's different. Right. But if it's pending, we have jurisdiction. That's right. I mean, and so I think the motions to reopen. So I just want to know why that's different. Yeah. Motions to reopen, I think, are different because there's a specific clause. I mean, there's, you know, Section 1252B6 explicitly provides for consolidation of a petition for review of a motion to reopen and a petition for review of the underlying order. Therefore implying that there must be a separate petition. Is that what you're saying? That's right. And that's exactly what the Supreme Court said in Stone. That was the basis of their decision. So explain to me why we shouldn't treat the two petitions here separately. Because I think there can only be one final order of removal. And so the ---- But that's an answer, isn't it? I mean, to put it differently, that's a conclusion, not an answer. We have two petitions, one for asylum and one for withholding. Right. Withholding is asylum is denied. Withholding is granted subject to something else happening. Right. In the absence of a consolidation order, would those be separate petitions? Well, I don't think you can bifurcate the agency's order. And I don't think you can say that ---- Well, and the government doesn't want us to either. So I guess I'm asking ---- I may be asking a question that has no outcome on this case, but it does seem strange to me. The order of removal, which is to say the denial of the asylum petition, is final, isn't it? Is it not? What else has to happen to make it final? Well, I think ---- Viewed by itself, it's final, isn't it? Well, I think the problem is that it's ---- I don't think it's final because on remand, even though it's just for background checks, a whole bunch of different things can happen when the case goes back on remand. But the immigration judge can't reopen the asylum question once the board has affirmed it, can it? Well, the immigration judge could, actually. I mean, for example, if background checks were to reveal information that was derogatory towards the withholding application, that would also affect the eligibility for asylum. But the board has already said she's not eligible for asylum. I don't understand ---- Or similarly, it's possible that somebody could provide evidence to the immigration judge that addressed, for example, the timeliness issue. And because when the case is on remand, the board has said that the immigration judge can consider new evidence. So that evidence on remand might convince the immigration judge that she actually did file her application timely. Could the immigration judge consider new evidence on the merits of the asylum application on remand without a motion to reopen? Yes. And that's what the board held in matter of Alcantara and matter of MD. And in fact, in matter of MD, that's exactly what happened. Well, it wasn't with regard to the asylum application, but there was new evidence showing that the petitioner was eligible for adjustment of status. And the board said the immigration judge has to consider that evidence on remand. Could I ask just about the timing issue? So if the IJs ---- under your theory of the case, the IJs March 28th, 2011 opinion is the last order. But that doesn't become final until 30 days when the time for appeal expired, April 27th, and the filing here of the petition for review was six days earlier, so it was premature. And we have some case law saying a premature appeal is a nullity because there's no final deportation order to review. How do we deal with that? Would we need to overrule that in order to give your client relief? Well, two answers to that. First of all, in our particular case, in written pleadings to the immigration judge, and this is at pages 14 and 15 of the administrative record, we explicitly said to the judge that we waived appeal. And so the 30 days that normally runs wasn't there in this particular case. And so we think that the immigration judge's order became final as soon as it was issued. And is that one of the bases for the order to become final waiver in the statute? Well, you know, if the time to appeal has run, then the order becomes final. And if we waive that time to appeal, then it's our view that that time has run. And the Third Circuit found the same in Popol. It reached exactly the same issue. But with regard generally to premature petitions for review, we do think that it would be appropriate if the court agrees with us that the immigration judge's last order was the final order of removal, we think it would be appropriate for the court to consider premature petitions for review with regard to people who have already filed petitions for review in reliance on Lee and its progeny. And that's because, you know, a number of different circuits have held that a premature petition for review can ripen once the agency's completed its work on the case. It's reached its final decision-making process. It's completed its decision-making process. And as long as there's no prejudice to the government. I thought you said, though, that the immigration judge had entered an order of removal, which is a necessary prerequisite to entering an order withholding removal. That's right. But that only satisfies part of the definition. So 1101A47 requires first in A that the IJ enter the order of removal, but it also requires that the board affirm that order in order for it to become final. Okay. But that happened in 2008 subject to a remand to complete the background checks, which goes not to the order of removal but to the relief of withholding. Right. But the board the order of removal was issued, but the board didn't affirm that order. The board remanded the case back to the immigration judge for further proceedings. But the question of finality is addressed to the question of the asylum claim. And that's where I think I'm having difficulty understanding your position, because the immigration judge didn't do anything to upset  The sole issue before the immigration judge was have the background checks been updated so that she is, in fact, eligible for withholding. Right. Well, I think that under the statute you can't bifurcate an immigration judge's decision into, for example, the portion that found her removable and the portion that denied asylum and the portion that denied withholding. And I guess that would be maybe trifurcating it. But the statute only allows for there to be one order, and it's the order of the special inquiry officer. So the board, I think, has to either affirm that in whole, or if it doesn't and remands for some form of relief, then it hasn't affirmed the order. Can the IJ at that point reconsider the asylum application? If there's new evidence, yes. I mean, let's say there is new evidence. Petitioner comes up with new evidence. Is that in a posture where the IJ can touch the asylum application or is that asylum application locked up because it's been affirmed on appeal? No, the immigration judge can consider new evidence as it relates to the application. The Alcantara and the MD opinions seem slightly inconsistent. So one of them suggests that the IJ cannot review items determined by the BIA. That was Alcantara. MD suggests it's all open subject to the motion to reopen standard. So is this an inconsistency in the opinions, and do we have a last word, and how should we deal with that? Well, I don't see the opinions as inconsistent for this reason. I think that what the board is saying is that an immigration judge can't reverse a decision that the board has already made on appeal. But if they're presented with new evidence that would affect eligibility for a different form of relief or one of the forms of relief the board already passed on, that it could consider that evidence. So let's say in this case that on remand your client had produced the bus ticket and the plane ticket that the BIA said that those were the documents they were looking for. Your view is that under the BIA case law you could have presented that to the IJ and asked for reconsideration of the asylum determination? Yes, and I think manner of MD pretty clearly allows that. Wouldn't she have to show that that evidence was not available to her at the first time she tried to litigate the issue? She would, yes. Can I ask what separates you and the government at this point? You both seem to believe that we have jurisdiction to hear the petition from a viewer. The government in front of the panel asked that we remand to the agency to reconsider the case in light of the same decision. And I take it all that separates the two of you is you think you ought to win without a remand. Yes, well, I don't think that it's, I mean, I think we agree that the immigration judges. Am I right? Is that what separates you and the government? Well, I think so. I think so. It's more than that. The government believes we have no jurisdiction to consider the asylum determination. That's what I was asking. If I can pursue that. Because the government's position below seemed to be that a remand, they filed a motion to remand. Right. And I don't read anything in their briefs to us on the unbanked issue that retreats from that position. Am I wrong? I don't think so, no. I'll ask the government that. So, again, what are we fighting about today? In front of this court, I don't think we're fighting about a whole lot, honestly. Well, it seems to me the only difference in your formal positions has been you think you win without a remand. And the government says let us take it back and reconsider it because we don't know how the same case applies to it. I think that's right. And I think the government's, and I won't speak for the government. I understand that's not what the panel said, but I'm just asking. We don't have to all agree with you, but I want to figure out what you guys are fighting about. But I think the government would say that, you know, the court does have jurisdiction over this petition, but that it should be denied on its merits if the court were to reach that. Well, I don't know. I'll ask the government that question. I thought they were taking a position. But, in fact, the government is not taking a position at the asylum. The government agrees that we can reach the asylum issue. That's correct. Yes. But we don't have jurisdiction to consider, reconsider the determination that the petition is laid. Let me again ask. Is that the panel's position or is it, I'll ask the government when they stand up. Yeah. No, that's what the panel. They want, the government has to overrule Ramadan and Cannabis Day, right? Yeah, I don't. That takes a position that these issues are not reviewable by the court of appeals because they're factual issues. Right. Do you have a position on that? Well, I mean, we think Ramadan was correctly decided. We think that. We're outnumbered there by nine other circuits, is it? Or at least nine other circuits, right? No other circuit has gone the same way. Why isn't this an opportunity for us to align our law with that of every other court of appeals that consider the issue? Well, I mean, I think there's a significant case law that's developed in this court based on Ramadan. I know, but we're in bank now. We can take a look at Ramadan. We can look at Lynn. And it's clearly inconsistent with the statute. The statute says we can't review factual determinations. Here you have a factual dispute as to whether your client did or did not file within the one-year time. And here we are reviewing it. Why isn't this an opportunity to say, yes, we have jurisdiction to consider the appeal because the order now is final? And doing that, we don't have jurisdiction to reconsider the factual determination. Well, I think, first of all, I think Ramadan is correctly decided. I think that. I'm not persuaded by it, but why don't you go ahead and tell us why we should stick with it? I think if the court is going to reconsider Ramadan, there should at least be some supplemental briefing on that issue. I mean, we haven't. You know, the government in its response to our petition for rehearing explicitly said that, you know, that issue was not before the en banc court. And I understand, obviously, that the court can, you know, take any issue that it wants to, but it hasn't been briefed. The full case is on bank. You know, so there's no, the only difference between this and this panel is that we have authority to overrule prior precedent. So you are seeking, if we wish to consider the issue, you're seeking briefing on that. Do you have a view on it? Well, I mean, I believe that, you know, the Ramadan panel's decision is correct. I mean, I think that. Why have we not been joined by any other circuit? Every other circuit that has considered the issue has gone the other way. Well, I mean, I can't speak to that. I mean, I know there's a split. I know there's a split on this circuit as well. I'm sorry? I know there's a split on this circuit as well. I mean, you know, there. May I ask a question? You readily conceded that this is a factual dispute on that substantive asylum question, the one-year bar. And I didn't quite understand it that way. And tell me where I'm wrong in my analysis of this. I was thinking that it's not really a factual dispute. It's more a sufficiency dispute. Your position is that your client's testimony alone as to the date that she entered should be deemed sufficient and corroboration that was asked for by the BIA and the IJ is not required because she was otherwise deemed credible. That's correct. So why is that a factual dispute? Isn't that a legal dispute? Well, yeah, it is. It's the application. It's a factual dispute to Judge Kaczynski. To Judge Kaczynski. I understand. Yeah, I didn't mean to. Well, you want us to reconsider the finding. You want us to reconsider the finding that the petition was not timely. That's a factual dispute, isn't it? Well, no, I don't think it's a factual dispute. I mean, it's the application of undisputed facts to the law, which this Court has held to be a legal issue. What is the legal issue? I mean, the only thing I saw, there's a standard whether Abdus Salaam has demonstrated by clear and convincing evidence that the application was timely filed. And so the only legal issue would be was there clear and convincing evidence of timeliness? And we said even in Singh, in normal Singh, that that's a factual issue. So I wasn't sure what the legal issue is. And maybe you could explain to me what the legal issue is. Yeah. Well, this Court held in Ramadan that the application of undisputed facts to the law is a legal issue. In this case, what is the legal issue? I'm sorry? In this case, what is the legal issue? The legal issue is whether the Ms. Abdus Salaam's testimony and her witness's testimony, which were both deemed credible by the agency or in the absence of a – which this Court has to assume is credible in the absence of an explicit credibility finding, if that evidence meets her burden of establishing her date of entry by clear and convincing evidence. What you're arguing is that the agency applied the wrong legal standard to the evidence. That's correct. That in the absence of an adverse probability finding. Because it deemed her own – because it had a rule that said your own testimony is not good enough. What's the legal standard? And you're saying it shouldn't have such a rule. What's the wrong legal standard? That's right. Because the – I'm sorry? What is the wrong legal standard that the IJ applied? Well, I think they – I think the agency assumed that credible testimony isn't enough to meet one's burden of proof. We said that in Sing. We said that in Sing, that credible testimony is not necessarily clear evidence. Yeah, but that was a post-Real ID Act case. No, that one was pre- Hermal Singh? Maybe. The Ambant case? That was a – I'll let you win that one. Okay. By the way, is this supposed to be – I argued that. Is this a post-or pre-case? This is a pre-Real ID Act case. Well, it started as a pre-Real ID case. Did the agency apply pre-Real ID standards or post-Real ID standards? Corroboration seems to me like a post-Real ID standard. I think that's right. I mean, I think – I think the agency assumed that testimony standing alone wasn't sufficient, whereas it is. Well, which is why I asked about the wrong legal standard. It seems to me what the agency did because it came up post-Real ID was – appears to have applied the post-Real ID standards of corroboration to a case that didn't require corroboration. I think – I think that's right. We said in Singh that corroboration from the B-2, it doesn't apply in this context, and we held open the question about whether corroboration could be required for clear and convincing. So I don't think that could be right. Well – We specifically held open in Singh – Right. – corroboration for timeliness as being something the IJ could request. Right. But, again, that was a post-Real ID act case. But that – but we didn't apply the post-Real ID act standard because we expressly held it wasn't applicable in this timeliness context. Well, no, but the Court did apply the post-Real ID corroboration requirement and – He said it wasn't applicable. And said it wasn't applicable. He said it wasn't applicable to the timeliness, right? That's true. I mean, the Court left that as an open question, but the – The government asked us on – in response to rehearing or on – did they file a rehearing petition asking us to do anything with Ramadan or in response? I know they said they don't like it, but did they ask the bank court to rule on it? No, never. Of course, it doesn't matter, right? It doesn't matter, but – We are a bank. Yeah. It doesn't matter, but, I mean, at a minimum, I mean, I think it would be appropriate to allow us to – Oh, I understand. You wish a chance to brief it. I fully understand it. But it wouldn't bar us in any way from reconsidering a precedent that – removing a circuit conflict if we thought there was one. Yeah, I mean, if – yeah, I mean, if – Do you still reserve your time? I do. Thank you. We'll hear from the government. Good afternoon, Your Honors. My name is Jessie Carlson. May it please the Court, my name is Jessie Carlson. I represent the government in this case. As you know, the government supported Ms. Abdisalan's petition for an embankment hearing of the panel's decision in this case. The primary issue to be decided today is when aliens should seek judicial review of Board of Immigration Appeals decisions when the board denies some forms of relief but remands the case to an immigration judge for further proceedings. Let's assume we agree with both – this strange case. You both agree on the main issue in the case. What do we do with the case? Well, Your Honor, if you agree with the position on this particular issue – That we have jurisdiction to consider the petition for review because – Well, Your Honor – It was – a timely petition for review was filed. What do we do with it? Well, the secondary issue is the issue that we don't agree on. So in that instance, if you agree that you have jurisdiction to address the – to address the case in general, obviously the second issue has been briefed and that is an issue where the government asserts that the court does not have jurisdiction. What do we do with your motion to remand? The motion to remand was already denied by the court. I know, but as Judge Kaczynski reminds us, that was a different court. That's right. We're all here. That's right. It's still in front of us. That's true. Why shouldn't we let you grant it? Well, if the court is inclined on that issue to grant the government's motion to remand, then the case should be remanded back to the board to address the clear and convincing standard in the first instance and how that standard should be applied. It's not the only position. The one difference, of course, is that the panel couldn't reconsider Ramadan and was bound by it, so your motion was made in the context of a panel that had no choice but to be followed up, right? That's right, Your Honor. The government doesn't believe that Ramadan applies to this case, but as Mr. Hahn indicated, if the court is inclined to consider that issue today, the government would request a supplemental briefing be provided or be allowed on that issue. And why do you think Ramadan doesn't apply to this case? In this instance, the government doesn't believe Ramadan applies because there is, in Ramadan, the mixed – first of all, there's no mixed question of long fact. It's the government's belief that the question is a question of fact as to whether or not the application was timely filed. In addition to that, even if the facts were – the facts are not undisputed on that issue. There's definitely very much a dispute as to whether or not the application was timely filed. What's the dispute? The dispute is as to when it was filed. What's the dispute? I mean, there's – she testified and you – and the IJ said he chose not to – that it wasn't corroborated, he wasn't going to say it was sufficient. But there was no counter-testimony, right? No counter-evidence. Well, there's no counter-evidence, but the – There was no dispute. Well, there is a dispute because the dispute is whether or not the – Ms. Abdislan met the clear and convincing evidence standard. But that's a legal issue. There's no factual dispute. Well, the factual dispute comes into play with the immigration judge's determination as to whether or not her evidence was sufficient in the first instance. All right. So what's your theory about when she came to the United States? What's the government's position about when she entered the United States? The government's position is that that fact has not been – has not been proven by clear and convincing evidence. You don't – the government doesn't have a position on when she came to the United States, and the only evidence in the record says she came in February or March, right? That is the only evidence. And there was no adverse credibility determination? There was no explicit adverse credibility determination. However, the immigration judge in this instance was, you know, assessing – The I.J. could believe her and say it's not clear and convincing, right? I'm sorry, Your Honor? The I.J. does not have to disbelieve her. Right. The I.J. could believe her or be in doubt and just say it's not clear and convincing. The I.J. could have believed her, and the evidence could have – the I.J. could have determined the evidence to be credible. But even if the evidence may have been credible, that does not mean that it rises to the level of the clear and convincing standard. So what the government is asking for is corroborating evidence in this particular  The government is not – was not – did not – there was no specific request for corroborating evidence. Is it the government's view that if the I.J. finds her to be credible, or at least in the absence of a credibility finding, she has to provide corroborating evidence in this circumstance to meet the clear and convincing standard? I don't – I wouldn't take it that far. Then how far are you taking it under the facts of this case? I wouldn't take – I believe in this instance that that wasn't the situation The government asked for a remand so that the BIA could address in the first instance what was required under that standard. Is that still your position? It is, Your Honor. Okay. So let's assume we agree with you that on the timeliness issue, you would – your preferred relief in this case is that we grant your motion to remand to the agency. Well, I – I understand if we – you're saying if we're going to reach the Ramadan issue, you want to brief it and you have a position on it. But I'm asking you what your preference is. You're here representing the United States. What does the United States want us to do? Well, Your Honor, if the court is not inclined to do it – No, don't tell me what we want to do. They'll tell me what we want to do. Right, right. Tell me what you want us to do. In the first instance, the court would request that the court uphold the board's determination. If that is something the court's not inclined to do, then a remand would be appropriate to address that – the issue that I have mentioned. So you've taken – you've changed your position from below where you asked for a remand? Well, no, the position hasn't changed, but obviously – Apparently it has because you want us to affirm it rather than remand it now. I think the remanding would certainly address this issue in a more comprehensive fashion. So that would be the – Your choice. You tell me. What should you choose? The remand would be the preferable course.  We may not do it. I just want to know what you want. I understand. Could you tell me – I'm still not understanding how that relates to the Ramadan issue. Let's say if we're considering Ramadan were on the table as a possibility. Where does that fit in the hierarchy of preferences the government has? Well, again, Your Honor, since that issue has not been briefed, the government has indicated in its prior briefing, which was not briefed for an unbanked panel, that it doesn't believe that that applies. Maybe you're not in a position, not having check with your superiors or attorney general to give us a view if that's the position, whether we should have a Ramadan. Maybe that's your position, that you just can't state, you can't bind the government to this. At this point, I would prefer to address it in supplemental briefing. Could you explain to me why, if Ramadan and Singh remain there, you say on the one hand that this is a factual, not a legal question, but then you say you want a remand. So how do those two pieces fit together? Well, as I mentioned before, looking at this case, as far as we were concerned, the remand issue had been, was off the table. But obviously the court can, in this instance, can look at this case anew. But the question that's before you. But your remand would only lie if there were, if even under Ramadan, this was not a factual question. It was at least a mixed question, right? Well, the government does not believe this is a mixed question. But you just told us you want a remand. You really are going in different directions. So what do you want the BIA to do or the IG to do? Are you asking for a reopening for additional evidence? Because you're not asking that. No. Okay, so let me ask you another question. So assume that we think this is a legal question, that whether testimony alone, pre-ID, requires corroboration to meet the clear and convincing standard. Why do, why should we remand to the BIA? We can decide legal questions. Well, the instance, remanding to the BIA under a normal setting was what we had asked of before. Because the, in that instance, we would be asking the board to address its interpretation of the clear and convincing standard. So right now we seem to be talking about, you know, all these legal issues and we're going to hash it all out or whatever. Is the government really opposed to granting relief to Ms. Evans-Zelland? In this instance, the government does not believe, first and foremost, that this court has jurisdiction to address that issue. Yes, you didn't answer my question. We know your position on jurisdiction. The government doesn't believe that she met the clear and convincing standard to prove that her application is timely. And why are you asking for a remand? So the board can consider that issue more fully. Well, then you must believe that we don't yet know whether she met the standard. Well, it's, there is, because the issue could be addressed by the board with more clarity, the government would be amenable to doing that. So are you confessing error at the board level that the board applied the wrong standard? It already appealed. No, I'm not confessing error on that. Counsel, let me finish my question. The board already upheld the immigration judge's determination that she had not met her burden of proof to show that the application was timely filed. What would a remand accomplish as to that issue if the board already affirmed it? Well, the remand, what we sought remand for originally was to address that interpretation. In that instance. So does that mean the board erred? I mean, you want a more fuller explanation of why the board affirmed and then have the board affirm again? Is that what this en banc argument is all about? No, Your Honor. The government's understanding is that the issue at this argument, the primary issue to be addressed here was actually the finality issue as opposed to the timeliness issue. If the government, I would request that the government be able to brief the timeliness issue more fully. I think with the way the government's position is coming off is that you want the BIA to reconsider the issue and have it decide that in favor, oops, sorry, in favor of the petitioner because why else would you want a remand? They already denied it. So the only possibility is changing their mind. Well, Your Honor, as I mentioned before, the issue that we believe to be the primary issue to be addressed here is the finality issue today. Obviously the court certainly can. On the remand question, if we could just clarify it. I thought you were seeking remand because you had our en banc decision in Sing and the board didn't have the benefit of that and you wanted the board to reconsider the case in light of the en banc decision in Sing. Wasn't that it? Yes, Your Honor. That is it. That's what you want. You're not going to, I mean, that's the remedy you wanted in the first instance was to say let's take a look at the cooperation statement made in the BIA decision based on the cooperation statements that we've made in Sing. Wasn't that it? Your Honor, yes. That decision was not available. So, you know, the board, having the benefit of that decision, can take a look at this case. That decision, does that go to the clear and convincing standard? The normal Sing case? That the BIJ applied? I'm sorry, Your Honor. I'm sorry. Maybe I'm confusing that case a little bit. Are you, do you want the BIA to reconsider the underlying merits of the time bar or do you want the BIA to reconsider what the clear and convincing standard was per real ID? Your Honor, as I mentioned, I request that we have the opportunity to brief this issue more fully if that, if the court is inclined to address the issue. But looking at, to answer your question, the reason that we remanded the case was to allow the court to, the board to look at the case with normal Sing as the benefit of that case and what it held. Can I just ask you about the prematurity issue? Do you agree with the opposing counsel that even though the petition for review was premature, we should consider it anyway? And if so, on what basis? Your Honor, the government has typically taken a position where that premature petition should not be considered. In this instance, however, there was a waiver of appeal. And so it would be the government's position that in this instance the petition was timely filed in light of that waiver. And is that statutory or is that a regulatory? I believe that's regulatory. But it, you know, it falls under the statute as far as the fact that the time had run for the board, for an appeal to the board. And in this case, she actually waived, Ms. Abdislam waived appeal. And so she couldn't have appealed under your regulatory scheme. At that point, in general, the board's position, as I understand it, is once you've waived appeal at the IJ level, that's it, you can't appeal. Well, at that point, not, if she waived appeal to the board, she wouldn't be able to appeal back to the board. Right. But she could petition for review with this Court. Right. But that's a more general ruling, that you ask people at the end of the IJ hearing, do you waive appeal? And if they waive appeal, there is no appeal. It's over. Well, in this instance, I don't believe she waived appeal at that particular point. I think it was later. It was beyond that point. But whenever she waived it, it's over. There is no appeal. Well, in this instance, I believe at that point, in this case, it's the government's position that her removal order wasn't final until the immigration judge entered that order, and so, therefore, that would be the culmination of all proceedings, and that's when she could file her appeal with this Court. She decided to waive any appeal before the Board of Immigration Appeals, which would have been an option that she could have taken if there was any reason to do so. But in this instance, all of her proceedings have been completed and she can't. Can we go back to the original question? Sure. I.e., the jurisdiction. Your position, as I understand it, is that any remand for any reason makes the – whatever the Board has done non-final and not the subject of a petition. Is that right? That's right. Whether it's – and that would include if there were two grounds for relief and one was granted and one was denied, or if there is a need for a background check, or if it's for voluntary departure also for that? That's right, Your Honor. Anything. As long as the proceedings are ongoing, it's the government's position that the proceedings are not final and that until they – until there is an order, a final order. Now, that order, in most instances, that order would come from the Board, because in most instances you're not looking at a case where something is remanded. But if something is remanded to the immigration court, it's the government's position that at that point, after those proceedings have concluded, is the point that you would have one final order. Would you also agree that the IJ could have looked at something about the asylum had new facts been raised, for example? Yes, Your Honor. If something had been raised, if new evidence had been – had surfaced regarding the timeliness of the application that Ms. Abdislam filed, the immigration judge, since the case – all jurisdiction had been transferred back to the immigration judge, the immigration judge could have – could look at that evidence and could have made it a new determination. Was there some lack of ability to find it earlier or something like that? You know, subject to – I mean, obviously, the standard would have to be met, which is essentially the standard for reopening, although that's technically not what would happen. But if that standard was met, it is something that could be revisited. So you say the IJ reacquires jurisdiction at that point over all the claims? That's right, Your Honor. And your authority for that, is that the INRI MD or is there a statutory provision or a regulation? Well, yeah. I mean, in this instance, the matter of MD case speaks directly to this issue. In addition, I think the matter of Alcantara also talks about it. And I know there was some discussion earlier whether or not those decisions conflict with one another, and they really don't because you're – the board is not able – I'm sorry, the immigration judge is not able to address issues that the board has already decided. So in this instance, there was a denial of asylum. However – so that particular denial is off the table. However, if that – if a new – if new evidence surfaced, you'd be looking at essentially a new claim with new evidence. So that's where the distinction lies, is that anything that the board has already decided in that particular instance would be off the table. But everything – What does that mean? Yeah. What does that mean? I mean, there's only, what, different persecution or she comes up with different evidence that she had an entity? It would be if there were different evidence offered. I found the bus tickets. Correct. Therefore, if – But that's the same claim. It's not a different claim. Well – This is still a claim that I came in – the bus tickets or whatever within a year of filing a petition. It's exactly the same claim. You just got more evidence. Right. Well, it's being – it's being addressed in a different way. You have new evidence, which changes the situation. Unless there was new evidence – Well, she could just say, look, I'm going to testify again. This time I'm going to be clear and compelling, clear and convincing in my evidence. How is that different? Your Honor, she would have to meet the standard for a reopening, which has stringent requirements. She'd have to provide that evidence. I see. Okay. So that's a test. You have to meet the standards for reopening. Correct. But that's always the case, isn't it? I mean, this would be the case even if the case had gone up on appeal to us, right? Well, no, no. That would actually be reopening. In this instance, it's not technically reopening because the immigration judge already has jurisdiction. The case has not been finalized. The case is still unknown. Well, that's – that's what it was. Filing a petition, a motion to reopen within 90 days, that's the difference. Right. It's already reopened, essentially. Right. So – and I also wanted to clarify that point. I'm sorry. I'm sorry. I'm just now completely confused. So it is a reopening without a reopening petition? So it's the reopening standard, but you don't file a petition because the case has already been reopened? There's two situations going on. If you have a motion to reopen, you already have a final removal order that has been entered. And if you already have a final removal order, then you would have to file a motion to reopen that order. That's not our case. In this case, correct, that is not this case. In this case, her case, Ms. Abdisalan's case, had not been finalized. There was no final order of removal. Therefore, when the immigration judge reacquired jurisdiction, if new evidence had surfaced or if a new – if she made a new claim or sought new relief, the IJ, the immigration judge, had jurisdiction to address that at that point. Well, it's not a new claim. It still goes to the asylum claims. Procedurally, how does it work? The BIA remands back to the IJ for a background check in this case, and let's say she does have some new issues going to the asylum claim that she wanted to bring to the IJ's attention for reconsideration of the asylum claim. Would she then come before the IJ by some form of motion for reconsideration? What's the procedural vehicle, first of all, to bring back to the IJ's attention? She would – you know, I don't know if it would technically be a motion per se, but she would be able to indicate to the IJ that she had new evidence and she would like to have the IJ consider that evidence. There may be a motion of some sort that she would follow at that point. But the point is, is that the order would not be final, so she wouldn't have to follow the procedures for a motion to reopen specifically. But I thought you said she has to meet the reconsideration standard. She has to meet that. It's essentially the same standard, but it's not under the same procedures. Do you see that's confusing? Are you saying basically that in practice the BIA and the IJs follow an open remand? In other words, we have a limited remand when we're talking about district court cases and we confine the power of the district court to make certain decisions. Or we say we're remanding the case and it's presumed to be an open remand, so everything is within the jurisdiction of the district court to decide, subject to whatever standard you have. And what you're saying is in practice you have an open remand when it goes back to the IJ, regardless of the issue that was remanded, but that in practice the IJs require or impose the motion to reopen evidentiary standards to that kind of considering additional evidence. I think that's a very good comparison, Your Honor. I don't recall ever seeing a case here seeking review of the decision on a background check. Do we have jurisdiction over that? Yes. What about an adverse background check? Well, there was no adverse background check in this instance. I suppose there were one. If there were an adverse background check in this instance, then she would be denied withholding of removal, the withholding of removal grant. Right, and then we would be able to review the adverse background check? You would be able to review the denial of withholding. On the basis of an adverse background check? Yes, Your Honor. But not before she went back to the Board of Immigration Appeals. We couldn't review it on a direct petition for review from the Immigration Appeals Committee. Well, she could seek appeal with the Board. She couldn't do two appeals at the same time. So she could seek appeal to the Board. Well, I presume at that point she'd have to because she has to exhaust anything. The reason why you could get directly from the IJ to here is because there was nothing to exhaust anymore. Everything that she was trying to raise was exhausted. If she was trying to raise anything that hadn't been exhausted, she'd have to go to the BIA. Right. And that's a very important point. Exhaustion is a very important requirement that still is at play under our interpretation of finality. Let me ask you this. The panel was as perplexed, the three-judge panel was as perplexed as the Enbank panel is as to exactly what the government's position is. If we are to write an opinion that is going to clarify the rule in this area, should it simply be that every time the Board of Immigration Appeals remands a case to the immigration judge, that is not a final order that can be appealed through petition for review to the Court of Appeals? Your Honor, I believe that would be correct. If there is a remand and the immigration judge has not entered a final order, the case remains pending. Okay. And then if thereafter a petition for review is filed directly from the immigration judge's before we can declare that it is a final order? Well, Your Honor, yes. Exhaustion principles would definitely be required. I mean, if the order became final either because of expiration of the time or waiver, then we would have jurisdiction. It's just any claims that weren't exhausted, we wouldn't have jurisdiction to hear those. Isn't that right? Right. In this case, for example, all claims had been exhausted. The only thing in this particular case, there was the background checks were pending. However, the issue that distinguishes this case from the panel's interpretation, I believe, or the government's position, rather, is the fact that proceedings did, you know, something that I think there was a procedural and substantive distinction that had been made in the panel decision and the Lee case. And the government's position is that really you're looking at the entire case being open here. And so while in this case there was no new claim that was brought, it could have happened. And so therefore, it's not simply background checks per se because there is the possibility that more substantive things could occur at that point. And that's why we would say that a final order would be after that. And I'm sorry that may not have answered your question. I apologize. But as a matter of fact, when it went back to the immigration judge, she cleared the background check. They were updated. And so she was granted withholding of removal. That's right, Your Honor. That's right. So at that point, she has no reason to appeal that decision because it was in her favor. Instead, what she tried to do was to then appeal the denial of asylum that had been granted more than two years earlier. Right. That had been upheld more than two years earlier. Right, Your Honor. But that is the appropriate time to do so because everything that had culminated in the case, she did in fact receive withholding, but the asylum denial was still had still had not been finalized and had not been made part of the final order of removal. What I'm saying is that for our purposes, we should look at the IJBIA as a black box for this purpose. And as long as somebody hasn't decided something, there's no finality, just as there isn't in our jurisdiction. If the district court hasn't decided something, it could be that the appeal is going to be about something that happened two years ago when we have a district court appeal, as long as there's no final order. And you're just saying for our purposes, the whole agency is one entity. So until it's done, it's not done. Well, Your Honor, I think that might be right. I kind of look at it as a box of, you know, and there are parts of, you know, the contents of a box that may have been, you know, you might have one piece in it. But the box doesn't matter to us, is what you're saying. Where it is in the agency isn't our problem. Right. What matters for your purposes is the full box being given to you with all the issues in it. What you're saying is let the agency finish its work and then take the case on the petition for review at that point. That's right, Your Honor. How do you respond? I'm sorry. I didn't mean to interrupt. I thought you were done with your question.  The corollary then would, assuming that there is a BIA order remanding, if the petition had appealed the BIA order in this case, the government's position is, I assume would be, we lacked appellate jurisdiction over that because it's a non-final order. Well, the government's position under the rule that it's advocating for now would certainly conform with that. However, the precedent. If we adopted your rule, yeah, if we adopted your proposed rule, at that point we say, look, we've got to reject this petition for review because it's non-final and the appeal is the petition for review is premature. We lack appellate jurisdiction. Right? Correct. As long as there are proceedings outstanding. So I have a slightly different question. I mean, it's very different. The amicus brief makes an argument that the BIA should not be remanding for background checks, that it's not required to under the regulations and that it's actually required to issue final orders in that situation and that that final order could be appealed to us and the background check is an administrative thing that could just go on. So how do you respond to that? Well, first of all, the claims made in that brief, none of that has been exhausted or addressed in briefing, but that being the case, the government. I'm asking you, giving you your chance right now. Right. The government, I mean, the board has the authority and the discretion to handle the regulations that it interprets in the way that it does. And so certainly the board could do something differently, but it's not required to do so. What's wrong with that suggestion? I mean, it seems to me that we would avoid all of these problems if the BIA did one of two things, either retain jurisdiction over the case while the background checks were being completed and issued its final order then, or as Judge Wardlaw suggested and the amicus brief suggests, simply treated the administrative background checks as not impacting the finality of the order. We can give you Chevron deference under either circumstance, it seems to me, but why isn't one of those solutions better than this black box that you tell us when it's, you'll tell us when, we won't know when it's over until you come up on appeal and you tell us it's over. Well, you know, as I mentioned before, I mean, the board, for whatever reason it has, chooses to handle this matter this way, and it has the discretion to do so. I can't say whether or not there's any compelling, you know, particular reason, but it's certainly not an arbitrary and capricious exercise of its discretion in the way it handles it. But I can't tell you specifically, you know, is it the best practice. On the option that it has in the regulations, I thought that if the BIA were to essentially stay the proceedings and have the background check done, there still wouldn't be finality until the background check was done. Is that wrong? No, that's correct. So is the amicus brief arguing for something different? No, I don't believe so. All this avoids is perhaps some time lapse of getting the thing back, and it also, I assume, would eliminate this possibility of more going on at the IJ level at that point. I mean, certainly, you know, it's an issue that the board has determined that it wants to handle it in the way that it does, and that's the way that it's interpreting its regulations. If the petition is deemed timely, either by the BIA or this court, do you concede that she wins on the merits because she's already won on the merits on withholding? I mean, she's satisfied the higher standard for withholding. Is there anything left to do on the merits with asylum? Well, certainly, you know. Hypothetically, assuming that the application is deemed timely. I would have to defer. I mean, the case would have to be sent back for a final determination on that, but she has met the higher standard for withholding. So certainly that, you know, with that in mind, that is a higher standard than the asylum standard. Okay. Okay, thank you. Thank you, Your Honors. Just a few quick points. Judge Thomas, you talked about what to do with prematurely filed petitions for review, and the government took the position that they should be rejected. Our position, as I stated before, is that they should be treated as timely once they ripen, once the agency is finished with the adjudication of the case below. Right, but you would agree that under the scenario we described, where if you had appealed for the remand order, that we would lack appellate jurisdiction over that at that point in time? Yes. Under your proposed rule? That's correct. Is there going to be any, if we adopted that rule, are any people going to be caught in the middle of the two possibilities, as you arguably were, and lose their appeals? Presumably not, because the worst thing that could happen is that we would dismiss the early appeals and say, wait. Right. I don't think anyone would have filed too late. I think only people would have filed too early. But is there any chance that people would have applied too early, meanwhile there would be a final decision that it didn't file a petition from? Yeah. So there could be some people who would lose out in the middle. That's possible, but the way they wouldn't lose out is if the court adopts the idea that a premature petition can ripen. And it's done so in appeals from district court decisions, and like I said, other circuits have dealt with this in the immigration context and found that premature petitions can ripen. That's not something we can deal with here, right? Sure. That would be an issue for the next case that actually raises that issue. We can't here hypothetically say, oh, if you get caught, don't worry, you're safe. Well. We have a waiver here, isn't that right? You said that the waived appeal, your final waived appeal. Yes. In this particular case, I don't think so. But, you know, there is another petition for review that's pending. I mean, there's the petition from the remand order. And so I think the court can address that, you know, in terms of the ripening issue because that petition for review is also pending before the court at this point. But I thought your position. Well, say we have jurisdiction over one and also sort of opine on the other one because if we have jurisdiction over the one, we don't have jurisdiction over the other one. Well, the whole idea of the premature petition is that you file it too early, right? And so, I mean, I think the court could find jurisdiction over either under that theory, under the theory of the premature petition. And where is that petition now? I'm sorry? Where is that petition? Has it been heard by a panel or the other petition? They've been consolidated. They're both before the court now. Oh, right now. Okay. So we could deal with it. Yes. But if we only had an appeal from the petition filed on the remand order, wouldn't we just immediately dismiss it rather than hold it? Well, again, I don't think it's necessary because it was filed. How would you apply the Supreme Court's, and I understand 482 is different, how would you apply the first tier decision by the Supreme Court to this? For normal appeals, what the Supreme Court has said is if it's premature, you can hear it as long as everything to make the case final has been done except citing that final order. Here, the position of both sides is that everything to make the case final hasn't been done. So it seems to me that we would have a hard time finding premature petitions for appeal generally okay under the circumstances of your case. Well, everything has been done now. Well, yeah, because you – that's a circular answer because you waived the appeal. No. It's because the final order has been issued. No, but it's first tier. What first tier says is that at the time a notice of appeal was filed, and I recognize we're not dealing with exactly the same rules, if it's premature, it doesn't matter if the judge has just simply not completed all the formalities at that point, but all the decisions have been made. And your position here is necessarily that all the decisions haven't been made because you're arguing that this is – the order wasn't final until later. Right. And I guess the way it's been applied, at least in the immigration context and other circuits, in the Second Circuit, in Herrera-Molina, and there's a case called Lewis in the Second Circuit as well, is that a premature petition can ripen once the agency's decision is final as long as there's no prejudice to the government. What you're talking about is just timeliness, not necessarily appellate jurisdiction. That's right. I mean, you're saying, look, if we prematurely filed and then in 10 days everything was completed, then your failure to file a new petition shouldn't be deemed untimely. That's right. Just one other point with regard to the waiver of appeal. 1101A47B says that the order becomes final upon the expiration of the period in which the noncitizen is permitted to seek review of the order by the board. There's board case law saying that when you waive appeal of the immigration judge's decision, you can't seek appeal of that. So because that permission has ended as soon as you waive appeal, that's why I think the 30 days – excuse me – the 30 days starts at that point – or the 30 days doesn't run once appeal's been waived. The last quick point I wanted to make was just with regard to the board's decision itself with regard to the one-year rule. And I think it's important that when the board analyzed whether the evidence was clear and convincing, it started with corroboration. The first thing that the board says in analyzing it is, however, as noted by the immigration judge, the respondent conceded that she had no documentary evidence whatsoever to support her claim of having arrived in the United States in February 2002. And that's backwards. Under pre-Real ID law, there's – no corroboration is required of credible testimony. And this court has held in pre-Real ID – Real ID Act cases that the board must consider that testimony first, and then only if that testimony is not credible, then turn to the corroboration. And the board did it backwards. Does that apply to the timeliness determination? I thought we said no, that rule doesn't apply. Well, no, it does apply, because the only evidence that goes to the timeliness of the application is Ms. Abdusalam's testimony. So the court has to decide how to deal with that testimony. And our position and the agent – and the DHS's position as well, the asylum office's position, is that testimony in and of itself can constitute clear and convincing evidence. So if she says, I don't remember any of the details, but I know I filed it within a year of my arrival, is that enough to meet clear and convincing evidence, because there's nothing to refute it? Well, an immigration judge is certainly empowered to find that testimony not credible. But neither the immigration judge nor the board – Not to find it credible. Just not sufficient. Just not sufficient. Just not compelling. Not clear and convincing. Say, look, she doesn't have this other stuff. It's so vague, it's not clear and convincing. Well, I mean, this – you know, a case like that might invoke SIDU under the pre-Real I.D. Act standards. So the board – the immigration judge might be able to, you know, request particular corroborating evidence if they – you know, if – I think in SIDU the court said if the immigration judge doesn't know what to believe. So, you know, it's possible that – Did the IJ here request the evidence as opposed to after the facts say she didn't have it?  Did the IJ here say to her, I want this evidence? No. I mean, she was asked on cross-examination if she had the documents, but she was never told beforehand. But she was asked about it. It's not like this was pulled afterwards. Say, she was asked. She was. But again, I mean, I think that in this – this isn't one of those cases where Should I don't have it or I don't have it with me? I think she said she didn't have – I believe she said she didn't have it. But this isn't one of those cases where the immigration judge found that her testimony was vague as to her date of entry. The immigration judge didn't make any determination whatsoever. That there were so many inconsistencies, the IJ didn't know what to think, basically, because the IJ pointed to her declaration saying, oh, I know there's a lot of differences and changes, and they don't say the same thing. Said all the more so, you need corroboration. Well, I don't think he – I don't think he said that. I mean, he found her – I mean, he necessarily found her to be a credible witness. I mean, he granted her withholding of removal. There was a – there was corroboration of the female genital mutilation. There was an actor's note. Right. But, I mean, he never made any sort of adverse credibility finding with regard to Ms. Avdislan herself. And, you know, certainly had he done so, this could be a different case. But – Do you have a problem with the remand proposal of the government? Well, I don't think remand is necessary because I don't think the corroboration requirement of the Real ID Act applies at all in this particular case. So, I mean, I don't think that the board is going to come to any different conclusion than it did on remand. Okay. Thank you. Cases argued, stand submitted. We're adjourned.
judges: KOZINSKI, THOMAS, WARDLAW, GOULD, PAEZ, BERZON, TALLMAN, IKUTA, MURGUIA, NGUYEN, HURWITZ